**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| **TERESA STARKS**, on behalf of herself and all others similarly situated, | Case No. 1:25-cv-728 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **YES COMMUNITIES, LLC**, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff, Teresa Starks, on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, YES Communities, LLC, ("YES Communities" or "Defendant"):

**INTRODUCTION**

1.      Between December 9. 2024 and December 11, 2024, Yes Communities, a company headquartered in Colorado that owns mobile home communities throughout the United States, lost control over its computer network and the highly sensitive personal information stored on its computer network in a data breach perpetrated by cybercriminals ("Data Breach"). Upon information and belief, the Data Breach has impacted thousands of consumers whose data was in Yes Communities' possession.

2.      On information and belief, the Data Breach occurred from approximately December 9. 2024 to December 11, 2024. Sometime thereafter, Defendant learned cybercriminals had gained unauthorized access to employees' and residents', and possibly others, personally

identifiable information ("PII"), including but not limited to names, Social Security numbers, driver's license or state-issued ID numbers, and financial account information.

3.  On or about February 24, 2025—over two months after the Data Breach first occurred—Yes Communities finally began notifying Class Members about the Data Breach ("Breach Notice").[1]

4.  Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering it an easy target for cybercriminals.

5.  Defendant's Breach Notice obfuscated the nature of the breach and the threat it posted—refusing to tell consumers how many people were impacted, how the breach happened, or why it took the Defendant over two months to finally begin notifying victims that cybercriminals had stolen their highly private information.

6.  Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

7.  Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

---

[1] Defendant's Breach Notice, addressed to and received by Plaintiff, is attached hereto as **Exhibit A**.

8.      In failing to adequately protect the PII in its possession, adequately notify impacted individuals of the Data Breach, and by obfuscating the nature of the Data Breach, Defendant violated state law and harmed an unknown number of consumers.

9.      Plaintiff is a Data Breach victim. She brings this class action on behalf of herself and all others harmed by Defendant's misconduct.

10.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that

## PARTIES

11.     Plaintiff, Teresa Starks, is a natural person and citizen of Michigan, residing in Lexon, Michigan, where she intends to remain. Ms. Starks is a Data Breach victim, receiving Yes Communities' Beach Notice on or around March 3, 2025.

12.     Defendant, Yes Communities, LLC, is a Delaware corporation with its principal place of business at 5050 S. Syracuse Street, Suite 1200, Denver, Colorado 80237.

## JURISDICTION & VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; and Plaintiff and Defendant are citizens of different states.

14.     Yes Communities, LLC, is incorporated in Delaware and maintains its principal place of business in Colorado at 5050 S. Syracuse Street, Suite 1200, Denver, Colorado 80237. Yes Communities is therefore a Delaware and Colorado citizen.

15.     This Court has personal jurisdiction over Yes Communities because it is a citizen in this District and maintains its headquarters and principal place of business in this District.

16.     14. Venue is proper because Yes Communities maintains its headquarters and principal place of business in this District.

## BACKGROUND FACTS

### *Yes Communities*

17.     Yes Communities, LLC is a corporation headquartered Colorado that owns and operates mobile home communities[2] with "major concentrations in Florida, Georgia, Iowa, Michigan, North Carolina, Oklahoma, South Carolina, Tennessee and Texas and continue[s] to grow."[3]

18.     On information and belief, Yes Communities rents, sells, and finances the purchase of mobile homes, in addition to operating mobile home parks.[4]

19.     On information and belief, in order to collect rent and to otherwise operate its business, Yes Communities accumulates highly private PII of its employees and residents.

20.     In collecting and maintaining its employees' and residents' PII, Defendant had a duty to safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

21.     Yes Communities understood the need to protect the PII in its possession and prioritize data security.

22.     Indeed, Defendant states in its Privacy Policy that it is "committed to protecting Your privacy" and that it "secures the Personal Information You provide on computer servers in a

---

[2] *See YES! Communities*, LINKEDIN, https://www.linkedin.com/company/yes-communities/about/ ((last visited Mar. 6, 2025).
[3] *Our Communities*, YES COMMUNITIES, https://www.yescommunities.com/About/Our-Communities (last visited Mar. 6, 2025).
[4] *See About Yes Communities,* YES COMMUNITIES, https://www.yescommunities.com/About/About-YES (last visited Mar. 6, 2025).

controlled, secure environment, protected from unauthorized access, use or disclosure. When Personal Information (such as a credit card number) is transmitted to other Web sites, it is protected through the use of encryption, such as the Secure Socket Layer (SSL) protocol."[5]

23.     Despite its promises to secure the PII in its possessoin and its recognition of its duty to protect the PII in its care, on information and belief, Yes Communities has not implemented reasonably cybersecurity safeguards or policies to protect its employees' and residents' PII or train its employees to prevent, detect, and stop breaches of its systems. As a result, Yes Communities leaves significant vulnerabilities in its systems for cybercriminals to access and steal the PII in its possession.

***Yes Communities' Data Breach***

24.     Between December 9, 2024 and December 11, 2024, Defendant was hacked.[6]

25.     According to Defendant, it "became aware of suspicious activity within [its] network and immediately took steps to investigate the activity and verify the security of [its] network."[7]

26.     Defendant stated it launched an investigation, which alarmingly, revealed that "between December 9, 2024, and December 11, 2024, and during this time *files were copied*."[8]

27.     Defendant further reported to the Iowa Attorney General that its investigation "identified ransomware on certain Yes Communities systems."[9]

28.     According to the United States' Cybersecurity and Infrastructure Security Agency

---

[5] *Yes! Communities Privacy Polity,* YES COMMUNITIES,
https://www.yescommunities.com/Privacy-Policy (last visited Mar. 6, 2025).
[6] *See* Exhibit A.
[7] *Id.*
[8] *Id.*
[9] Defendant's "Notice of Data Event" sent to the Iowa Attorney General is attached hereto as **Exhibit B**.

("CISA"), ransomware is an ever-evolving form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable.[10] Malicious actors then demand ransom in exchange for decryption, often threatening to sell or leak exfiltrated data or authentication information if the ransom is not paid.[11]

29.     Defendant admitted that the following PII stolen by the ransomware actor included:

  a.  names;

  b.  Social Security numbers;

  c.  driver's license numbers; and,

  d.  financial account information.

30.     Due to the obfuscating language in Defendant's Breach Notice and "Notice of Data Event", the extent of the ransomware actor's "access" to its systems and what PII of Plaintiff's and the Class was "copied" is unknown.[12] It is also unknown how the ransomware actor was able to gain "access" to Defendant's computer network or how many of Yes Communities employees and residents, and/or possibly others, were impacted by the Data Breach.

31.     And yet, Defendant waited until February 24, 2025025 before it began notifying the Class—nearly a month after the Data Breach was discovered.[13]

32.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

33.     And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk

---

[10] *Ransomware FAQs*, CISA, https://www.cisa.gov/stopransomware/ransomware-faqs (last visited Mar. 6, 2025).
[11] *Id.*
[12] *See id*.
[13] Ex. A.

of suffering identity theft, warning Plaintiff and the Class:

      a.   "We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors;"

      b.   "As an added precaution, we are offering you access to 12 months of complimentary credit monitoring and identity protection services."[14]

34.    Defendant failed its duties when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from stealing the PII in its possession. Thus, Defendant caused widespread injury and monetary damages.

35.    Since the breach, Defendant states it is "implementing additional security measures within [its] network and [is] completing a review of [its] policies and procedures to further secure the information in [its] systems."[15]

36.    But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

37.    Moreover, Defendant has not explained what "additional security measures within [its] network" actually entails. Thus, upon information and belief, Plaintiff's and Class Members' PII remains unsecure.

38.    On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

39.    Defendant has done little to remedy its Data Breach. True, Defendant has offered

---

[14] *Id*.

[15] *Id*.

some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

40.    Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class members was placed into the hands of cybercriminals—causing Plaintiff's and the Class's PII to be stolen and put up sale on the dark web.

41.    Indeed, ransomware groups often post links to stolen data on a Data Leak Site ("DLS").[16] A DLS is a "website where the illicitly retrieved data of companies, that refuse to pay the ransom, are published."[17]

42.    However, even if a ransomware group removes stolen data from its DLS when a ransom is paid, there is no guarantee that the data will be deleted.[18] The stolen PII is valuable, and can easily be sold to another threat actor, so there is little incentive to delete it.[19]

43.    Ransomware groups can therefore monetize stolen PII and sell it on the dark web as part of a full identity profile.[20] Buyers can then use that information to conduct different types of identity theft or fraud, such as to file a fake tax return, to apply for a fraudulent mortgage or to open a bank account while impersonating the victim.[21]

---

[16] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomware-victims-that-pay-a-ransom-suffer-a-second-attack/#:~:text=While%20ransomware%20groups%20usually%20remove,little%20incentive%20to%20delete%20it.

[17] *Dedicated Leak Sites (DLS): Here's what you should know*, GROUP-IB, https://www.group-ib.com/resources/knowledge-hub/dedicated-leak-sites/ (last visited Feb. 5, 2025).

[18] n. 15.

[19] *Id.*

[20] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (listed visited Mar. 6, 2025).

[21] *Id.*

44.     Thus, on information and belief, Plaintiff's and the Class's PII has already been published, or will be published imminently, on the dark web.

45.     Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

46.     On information and belief, Yes Communities failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its employees' and residents' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from stealing the PII.

### *Plaintiff's Experiences and Injuries*

47.     Plaintiff Teresa Starks is a former employee of Defendant, having worked for Yes Communities from 2023 to 2025. Defendant used Plaintiff's PII to facilitate its business.

48.     Plaintiff received Defendant's Breach Notice dated February 24, 2024, notifying her that her PII was affected in the Data Breach.[22]

49.     Thus, Defendant obtained and maintained Plaintiff's PII. As a result, Plaintiff was injured by Defendant's Data Breach.

50.     Plaintiff is very careful about sharing her PII. Plaintiff stores any documents containing her PII in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

51.     Defendant had the duty and obligation to use reasonable measures to protect the PII in its possession according to Defendant's internal policies, as well as state and federal law.

---

[22] Ex. A.

Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized theft and disclosure.

52.    On information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the dark web.

53.    Indeed, in the aftermath of the Data Breach, Plaintiff has been bombarded with spam phone calls. Plaintiff continues to actively block spam calls, yet continues to receive new spam communications daily.

54.    On information and belief, Plaintiff's phone number was exfiltrated from Defendant's systems by a ransomware group in the Data Breach.

55.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft. After all, Defendant directed Plaintiff to take those steps in its Breach Notice.

56.    Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach.

57.    Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

58.    Plaintiff suffered actual injury from the exposure and theft of her PII and its threatened or actual publication on the dark web—which violates her rights to privacy.

59.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

60.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII in the hands of cybercriminals who in turn published her PII on the dark web.

61.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate her injuries.

62.     Today, Plaintiff has a continuing interest in ensuring that her PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

163.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, inter alia, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.     loss of the opportunity to control how their PII is used;

b.     diminution in value of their PII;

c.     compromise and continuing publication of their PII;

d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.     lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, inter alia, preventing, detecting, contesting, and recovering from identify theft and fraud;

f.     delay in receipt of tax refund monies;

g.     unauthorized use of their stolen PII; and

   h.  continued risk to their PII—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

164. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

165. The value of Plaintiff's and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

166. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

167. One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—first the stolen PII, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

168. The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

169. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this

Court or a jury, to find that Plaintiff and other Class members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

170.    Defendant disclosed the PII of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

171.    Defendant's failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

172.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

173.    In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.  Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the medical or healthcare industry.  Those 330 reported breaches exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

174.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to

ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."

175.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.

176.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

Defendant Failed to Follow FTC Guidelines

177.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

178.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business. There, the FTC set guidelines for what data security principles and practices businesses must use.  The FTC declared that, inter alia, businesses must:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

179.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

180.    Furthermore, the FTC explains that companies must:

    a.    not maintain information longer than is needed to authorize a transaction;

      b.      limit access to sensitive data;

      c.      require complex passwords to be used on networks;

      d.      use industry-tested methods for security;

      e.      monitor for suspicious activity on the network; and

      f.      verify that third-party service providers use reasonable security measures.

181.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized theft of confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

182.    In short, Defendant's failure to use reasonable and appropriate measures to protect against the unauthorized acquisition of its current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

183.    Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

184.    Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers;

monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

185.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

186.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

187.    Plaintiff brings this action pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

188.    Plaintiff sues on behalf of herself and the proposed Class ("Class"), defined as follows:

> **All individuals residing in the United States whose PII was impacted in Defendant's Data Breach, including all those who received notice of the Data Breach.**

189.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

190.    Plaintiff reserves the right to amend the class definition.

191.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements for suing as representative parties:

192.    **Numerosity**. Plaintiff is representative of the proposed Class, consisting of potentially thousands of members, far too many to join in a single action;

193.    **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

194.    **Typicality.** Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

195.    **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

196.    **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

a.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

b.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

d.   Whether Defendant breached contract promises to safeguard Plaintiff and the Class's Sensitive Information;

e.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.   Whether Defendant's Breach Notice was reasonable;

g.   Whether the Data Breach caused Plaintiff's and the Class' injuries;

h.   What the proper damages measure is; and

i.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

197.   Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

## COUNT I
### Negligence
**(On Behalf of Plaintiff and the Class)**

198.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

199.   Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their PII and/or not disclose their PII to unauthorized third parties.

200.   Defendant owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

201.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

202.    Defendant owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiff and Class members' PII to facilitate its business.

203.    Defendant owed—to Plaintiff and Class members—at least the following duties to:

a.    exercise reasonable care in handling and using the PII in its care and custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access; and

d.    notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

204.    Thus, Defendant owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

205.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

206.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

207.    Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their PII a necessary part of doing business with Defendant or being employed by Defendant.

208.    The risk that unauthorized persons would attempt to gain access to and steal the PII and misuse it was foreseeable. Given that Defendant held vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII— whether by malware or otherwise.

209.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiffs' and Class members' and the importance of exercising reasonable care in handling it.

210.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

211.    Defendant breached these duties as evidenced by the Data Breach.

212.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a.    disclosing and providing access to this information to third parties and

b.    failing to properly supervise both the way the PII was stored, used, and

exchanged, and those in its employ who were responsible for making that happen.

213.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiffs' and Class members' injury.

214.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and Class members' injuries-in-fact.

215.    Defendant has admitted that the PII/PHI of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

216.    As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

217.    And, on information and belief, Plaintiffs' PII has already been published—or will be published imminently—by cybercriminals on the dark web.

218.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted

from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

219.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

220.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

221.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class members' sensitive PII. As a result of Defendant's failure, the Sensitive Information of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their Sensitive Information was disclosed to third parties without their consent. Plaintiff and Class members also suffered diminution in value of their Sensitive Information in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft monitoring, and other expenses relating to identity theft losses or protective measures.

222.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data

breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

223.    Plaintiff and Class Members are within the class of persons that Section 5 of the FTC Act was intended to protect.

224.    The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class Members as a result of the Data Breach.

225.    Defendant breached its respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Sensitive Information.

226.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its residents and/or its employees, which is recognized by laws and regulations including but not limited to Section 5 of the FCT Act, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

227.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Sensitive Information.

228.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Sensitive Information Defendant had collected and

stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

229.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

230.    The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their Sensitive Information.

231.    Had Plaintiff and the Class known that Defendant would not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendant with their PII.

232.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

233.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money monitoring their accounts and credit reports; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

234.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so

long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

**COUNT III**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

235.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

236.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

237.    Defendant owed a duty to Plaintiff and Class Member to keep their PII confidential.

238.    The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

239.    Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' PII constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

240.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

241.    Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

242.    Because Defendant failed to properly safeguard Plaintiff's and Class Members' PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

243.    As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

244.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with its inadequate cybersecurity system and policies.

245.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

246.    Plaintiff, on behalf of herself and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Sensitive Information.

247.    Plaintiff, on behalf of herself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

**<u>COUNT IV</u>**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

248.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

249.    Defendant offered to employ and/or provide housing and other services to Plaintiff and members of the Class if, as a condition of that employment or of obtaining housing and other services, Plaintiff and members of the Class provided Defendant with their PII.

250.    In turn, Defendant agreed it would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard employees' and/or its residents' PII.

251.    Plaintiff and the members of the Class accepted Defendant's offer by providing PII to Defendant in exchange for employment and/or housing and other services with Defendant.

252.    Implicit in the parties' agreement was that Defendant would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

253.    Plaintiff and the members of the Class would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

254.    Defendant materially breached the contracts it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant also breached the implied contracts with Plaintiffs and members of the Class by:

    a.    Failing to properly safeguard and protect Plaintiff's and members of the Class's PII;

    b.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

    c.    Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

255.    The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendant's material breaches of its agreement(s).

256.    Plaintiff and members of the Class have performed under the relevant agreements, or such performance was waived by the conduct of Defendant.

257.    The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

258.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

259.    Defendant failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

260.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

261.    Plaintiff and members of the Class have sustained damages because of Defendant's breaches of its agreement, including breaches of it through violations of the covenant of good faith and fair dealing.

262.    Plaintiff, on behalf of herself and the Class, seeks compensatory damages for breach of implied contract, which includes the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT V
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

263.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

264.    Plaintiff and Class Members conferred a monetary benefit on Defendant conferred a benefit upon Defendant in the form of their labor and/or in the form of payments to Defendant for housing and other services. Defendant also benefited from the receipt of Plaintiff's and the Class's PII, as this was used to facilitate their employment or to facilitate Defendant's business.

265.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

266.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

267.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

268.    Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

269.    If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have provided their PII to Defendant.

270.    Plaintiff and Class Members have no adequate remedy at law.

271.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

272.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

273.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demand that this matter be tried before a jury.


Date: March 6, 2025


By: */s/ Raina C. Borrelli*
Raina C. Borrelli
Samuel J. Strauss*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
sam@straussborrelli.com

*Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*